Filed 11/27/24  P. v. Cowie CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B333908 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA091960) |
| v. | |
| DANIEL ANTHONY COWIE, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Teresa P. Magno, Judge.  Affirmed.

Sharon Fleming, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, David E. Madeo and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Daniel Anthony Cowie (defendant) appeals from the denial of his petition for vacatur of his murder conviction and for resentencing under Penal Code section 1172.6.[1]  He contends the trial court erred by finding him ineligible for relief under section 1172.6 as a matter of law and denying his petition at the prima facie stage.  Defendant alleges he made a prima facie showing of eligibility under the statute because faulty jury instructions were given at his 2007 trial.  Finding no merit to defendant's contention, we affirm the order.

## BACKGROUND

In 2009, the jury convicted defendant of two counts of second degree murder (§ 187, subd. (a)).  As to both counts, the jury found a principal personally and intentionally discharged a firearm, which proximately caused great bodily injury and death (§ 12022.53, subds. (d), (e)(1)), and the offenses were committed for the benefit of a criminal street gang (§ 186.22, subd. (b)).  Defendant was sentenced to an aggregate term of 40 years to life in prison.  In 2011, the judgment was affirmed on direct appeal in *People v. Cowie* (Apr. 26, 2011, B222597) (nonpub. opn.).

**Relevant legal principles applicable to section 1172.6**

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), amending sections 188 and 189, the laws pertaining to felony murder and murder under the natural and probable consequences doctrine, "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not

---

[1]     All further unattributed code citations are to the Penal Code.

2

a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The 2019 amendments to sections 188 and 189 effectively eliminated murder liability under the natural and probable consequences doctrine and changed the requirements for felony murder liability. (*People v. Gentile* (2020) 10 Cal.5th 830, 849 (*Gentile*).)[2] Under current law and with exceptions not relevant here, "in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

Senate Bill 1437 also enacted former section 1170.95, now section 1172.6, which provides a procedure to petition for retroactive relief for those who could not now be convicted under sections 188 and 189 as amended. (See *People v. Lewis* (2021) 11 Cal.5th 952, 957.) The procedure provided that a petition may be filed by a person convicted of felony murder or murder under the natural and probable consequences doctrine; and effective January 1, 2022, Senate Bill No. 775 (2021-2022 Reg. Sess.) (Senate Bill 775) extended the availability of relief to any "other theory under which malice is imputed to a person based solely on that person's participation in a crime." (§ 1172.6, subd. (a)(1).) The petition must allege the three conditions under section 1172.6, subdivision (a): (1) the charging document "allowed the

---

[2] Under the natural and probable consequences doctrine, a "'person who knowingly aids and abets criminal conduct is guilty of not only the intended [target] crime . . . but also of any other crime the perpetrator actually commits . . . that is a natural and probable consequence of the intended crime.'" (*People v. Medina* (2009) 46 Cal.4th 913, 920.)

prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine"; (2) "The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder"; and (3) "The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019."

If the petitioner establishes a prima facie case for relief, the court must issue an order to show cause, conduct an evidentiary hearing to decide whether to vacate the murder conviction, and resentence the petitioner on any remaining counts if it finds the petitioner entitled to relief. (§ 1172.6, subds. (c) & (d); *People v. Lewis, supra*, 11 Cal.5th at p. 960.) At the prima facie stage, the allegations of the petition must be accepted as true but, without engaging in factfinding, the trial court may look to the record of conviction to determine whether the allegations have been refuted as a matter of law; and if so, no prima facie showing can be made and the petition is properly denied. (*People v. Lewis, supra*, at pp. 971–972.) We independently review the trial court's prima facie determination that a petitioner is ineligible for section 1172.6 relief as a matter of law. (*People v. Coley* (2022) 77 Cal.App.5th 539, 545.)

**Defendant's section 1172.6 petition**

In November 2022, defendant filed a form petition pursuant to former section 1170.95 (since renumbered as section

4

1172.6).[3] He checked the boxes alleging required conditions for relief and requested the appointment of counsel. The court received briefing, reviewed the instructions given at defendant's 2009 trial, heard the argument of counsel, and denied the petition without conducting an evidentiary hearing.

Defendant filed a timely notice of appeal from the order.

## DISCUSSION

### I.    Instructions given at 2009 trial

Defendant contends the trial court erred by finding him ineligible for relief under section 1172.6 and denying his petition at the prima facie stage. Although there were no jury instructions regarding the natural and probable consequences doctrine or felony murder, defendant claims it was error because the jury instructions given at his 2009 trial, in particular CALCRIM Nos. 400, 401, and 520, allowed the jury to convict him of aiding and abetting second degree implied malice murder by improperly imputing malice of the actual perpetrator to him.

As read at defendant's 2009 trial CALCRIM No. 400 instructed the jury on the theory of direct aiding and abetting liability as follows: "A person may be guilty of a crime in two ways. One, he or she may have directly committed the crime. I will call that person the perpetrator. Two, he or she may have

---

[3]    Defendant's prior petition was denied, and the denial was affirmed on appeal. (See *People v. Cowie* (Nov. 13, 2019, B296955) [nonpub. opn.].) With the prosecutor's concurrence, the court agreed to consider this second petition, as defendant had not been represented by counsel in the trial court and appellate counsel had filed a *Wende* brief. (*People v. Wende* (1979) 25 Cal.3d 436.)

5

aided and abetted a perpetrator, who directly committed the crime. A person is equally guilty of the crime whether he or she committed it personally or aided and abetted the perpetrator who committed it."

CALCRIM No. 401 instructed the jury regarding aiding and abetting in relevant part as follows: "To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that: [¶] 1. The perpetrator committed the crime; [¶] 2. The defendant knew that the perpetrator intended to commit the crime; [¶] 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; [¶] AND [¶] 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime." The instruction further stated: "Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime."

The jury was also given CALCRIM No. 520, which defined express and implied malice murder as follows: "The defendant is charged in Counts 1 and 2 with murder in violation of Penal Code section 187. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant committed an act that caused the death of another person; [¶] AND [¶] 2. When the defendant acted, he had a state of mind called malice aforethought. [¶] There are two kinds of malice aforethought, express malice and implied malice. Proof of either is sufficient to establish the state of mind required for murder. [¶] The defendant acted with express malice if he unlawfully intended to kill. [¶] The defendant acted with implied malice if:

6

[¶] 1. He intentionally committed an act; [¶] 2. The natural and probable consequences of the act were dangerous to human life; [¶] 3. At the time he acted, he knew his act was dangerous to human life; [¶] AND [¶] 4. He deliberately acted with conscious disregard for human life."

## II. Aiding and abetting implied malice murder

The theory of second degree implied malice murder remains valid notwithstanding the recent changes effected by Senate Bill 1437 and Senate Bill 775. (*People v. Schell* (2022) 84 Cal.App.5th 437, 442, citing *Gentile, supra*, 10 Cal.5th at p. 850; *People v. Powell* (2021) 63 Cal.App.5th 689, 714 (*Powell*); *People v. Glukhoy* (2022) 77 Cal.App.5th 576, 599–600.) "Pursuant to this theory, 'an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life.'" (*People v. Schell, supra*, at p. 442, quoting *Gentile*, at p. 850.)

Defendant argues that when standard instructions on aiding and abetting second degree murder do not require the aider and abettor to personally know the act causing death was dangerous to human life and to personally disregard that risk, a prima facie denial of defendant's 1172.6 petition is error. He cites *People v. Langi* (2022) 73 Cal.App.5th 972, 983–984 (*Langi*), where that appellate court found CALJIC No. 8.31 (second degree murder) and CALJIC No. 3.01 (aiding and abetting) were flawed because they did not require a finding that defendant, as an aider and abettor, personally acted with malice and the court remanded the matter for an evidentiary hearing pursuant to section 1172.6, subdivision (d). (*Langi*, at pp. 981–982, 984.)

7

Defendant contends the instructions given here are equally flawed.

To the contrary, we note CALCRIM No. 401's instruction that the aider and abettor must know the perpetrator's purpose and intend to facilitate it. Here there was only one crime (murder) alleged against the perpetrator, and defendant acknowledges the prosecutor argued at trial that defendant was guilty as an aider and abettor of the killing by driving the perpetrator to the location where the perpetrator shot the victims. CALCRIM No. 520 instructed that when defendant acted, he acted either with express malice or implied malice, and then went on to define the two kinds of malice as for one to be guilty of implied malice, the People were required to prove he knew his act was dangerous to human life and he deliberately acted with conscious disregard for human life, essentially the same thing defendant claims the court should have instructed.

In a footnote defendant contends that although CALCRIM No. 520 "referred to 'the defendant' rather than 'the perpetrator,' it was clear from the context of this case that reference to 'the defendant' actually meant the perpetrator . . . since there was no allegation or argument that [defendant] himself committed an act that caused the death of another person." Apparently defendant asks us to accept an argument that the instruction suggested only the perpetrator of the act causing death was required to act with malice and only the perpetrator must know that shooting people presented a danger to human life. Defendant is also apparently suggesting that knowing the perpetrator's "purpose" as required in CALCRIM No. 401 is inadequate to allege defendant's knowledge of these requirements. Even if we accept defendant's reading of the instructions, we agree with the People

that defendant has shown no more than the existence of ambiguities that could have been raised at the time of defendant's trial.

As the People explain, before the time of defendant's trial, "the direct perpetrator's mental state could *not* be imputed to an aider and abettor, whose mental state had to be independently evaluated." (*People v. Burns* (2023) 95 Cal.App.5th 862, 868 (*Burns*), citing *People v. McCoy* (2001) 25 Cal.4th 1111, 1121.) Indeed, the *Burns* court discussed two cases decided long before the passage of Senate Bill 1437 in which the defendant complained former CALCRIM No. 400 contained the confusing "'equally guilty'" language (also given here) that could result in aider and abettor liability without regard to the defendant's personal mens rea. (*Burns, supra*, at p. 864, citing *People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1164 & *People v. Nero* (2010) 181 Cal.App.4th 504, 518.) Defendant's argument is based on different parts of the CALCRIM instructions given here, but nevertheless ambiguous and potentially confusing or misleading then as now, and misleading or confusing instructions regarding the mens rea required at the time of trial "amounts to 'a routine claim of instructional error' that 'could have been asserted on appeal from the judgment of conviction.'" (*People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921, 936 (*Berry-Vierwinden*).) Defendant "'cannot use it to resurrect a claim that should have been raised in his [direct] appeal.'" (*Ibid.*, quoting *Burns, supra*, 95 Cal.App.5th at p. 865.)

Defendant was entitled to an evidentiary hearing under section 1172.6, subdivision (d) *only* if he made a prima facie showing of all *three* conditions listed in subdivision (a). (*Burns, supra*, 95 Cal.App.5th at p. 867.) Defendant has not made a

9

prima facie showing of the third condition: that he "could not presently be convicted of murder or attempted murder *because of changes to Section 188 or 189 made effective January 1, 2019.*" (§ 1172.6, subd. (a)(3).) "Senate Bill No. 1437 did not *change* the law to prohibit direct aider and abettor liability on an imputed malice theory . . . ." (*Berry-Vierwinden, supra*, at p. 936.) As defendant's claim of instructional error was available to him at the time of his appeal from the judgment, his murder conviction has not become invalid *because* of *changes* to the murder statutes made by Senate Bill 1437.

Defendant contends his conviction has become invalid through case law. He suggests this change in law was made by the California Supreme Court in *People v. Reyes* (2023) 14 Cal.5th 981, 990–992 (*Reyes*), when it "endorsed" the definition stated in *Powell, supra*, 63 Cal.App.5th at pages 712–713.[4] In addition,

---

[4] The elements were described as follows: "'[D]irect aiding and abetting is based on the combined actus reus of the participants and the aider and abettor's own mens rea. ([*People v. McCoy*[*, supra*,] 25 Cal.4th [at p.] 1122.]) In the context of implied malice, the actus reus required of the perpetrator is the commission of a life-endangering act. For the direct aider and abettor, the actus reus includes whatever acts constitute aiding the commission of the life-endangering act. Thus, to be liable for an implied malice murder, the direct aider and abettor must, by words or conduct, aid the commission of the life-endangering *act*, not the result of that act. The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit *the act*, intent to aid the perpetrator in the commission of *the act*, knowledge that *the act* is dangerous to human life, and acting in conscious disregard for human life.'" (*Reyes, supra*, 14 Cal.5th at pp. 990–991, quoting *Powell, supra*, 63 Cal.App.5th at pp. 712–713.)

10

defendant suggests the change in law is demonstrated by the addition of CALCRIM No. 526, which clarifies the requirements to prove aiding and abetting implied malice murder, and reflected by a bench note to CALCRIM No. 401's September 2023 revision, which directs the instruction is *not* to be given when instructing on aiding and abetting implied malice murder.

We disagree. "[B]efore the enactment of Senate Bill No. 1437, there was 'a dearth of decisional law on aiding and abetting implied malice murder,' attributable to 'the heretofore availability of the natural and probable consequences doctrine for second degree murder,' which was 'much easier to prove . . . than . . . direct aider and abettor liability for an implied malice murder.'" (*Langi, supra*, 73 Cal.App.5th at p. 982, fn. 10.) But aiding and abetting implied malice murder is based upon the definition of implied malice, which was not changed by Senate Bill 1437 or 775, and thus "[p]ursuant to this theory, 'an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life.'" (*People v. Schell, supra*, 84 Cal.App.5th at p. 442, quoting *Gentile*, at p. 850.) As we read *Reyes* and *Powell*, those cases clarified the definition of aiding and abetting implied malice murder but did not change it. CALCRIM No. 520 and No. 401 needed clarification too, but they contained the requirements that continue to be valid, and there is nothing in the instructions given here that refers to imputed malice, only express and implied malice. "Implied malice is not imputed malice." (*People v. Carr* (2023) 90 Cal.App.5th 136, 139.)

Defendant also cites *Langi, supra*, 73 Cal.App.5th at page 983 to argue when standard instructions on aiding and abetting

11

second degree murder are inadequate, a prima facie denial of defendant's section 1172.6 petition is required.[5]  *Langi* cannot be read to suggest that such instructional errors may be asserted as a basis for section 1172.6 relief, even if the alleged error could have been raised on direct appeal under law that existed at trial and not changed by Senate Bill 1437, as the court in that case "did not consider the language of section 1172.6, subdivision (a)(3) requiring that defendants show they can no longer be convicted of murder 'because of changes' made by Senate Bill No. 1437." (*Berry-Vierwinden, supra*, 97 Cal.App.5th at p. 936; see *Burns, supra*, 95 Cal.App.5th at p. 868, fn. 7.)

In sum, as we have found the instructions regarding aiding and abetting and implied malice were not transformed by their ambiguities into the distinct concept of imputed malice, and as the flaws existed at the time of defendant's 2009 trial, he cannot now use them to resurrect a claim that should have been raised by direct appeal. (See *Burns, supra*, 95 Cal.App.5th at p. 865.)

---

[5]  In *Langi* the act causing death was an accomplice's punch, which caused the victim to fall and hit his head. (*Langi, supra*, 73 Cal.App.5th at p. 975.)  The defendant was convicted of second degree murder, robbery and battery (and found not guilty of felony murder).  (*Id*. at p. 977.)  The court reversed the summary denial of the defendant's section 1172.6 petition due to an ambiguity in the aiding and abetting instruction (CALJIC No. 3.01) and the second degree murder instruction (CALJIC No. 8.31), allowing the jury to "find the defendant guilty of aiding and abetting second degree murder without finding that he personally acted with malice." (*Langi, supra*, 73 Cal.App.5th at p. 982.)  Here, unlike in *Langi*, there was just one crime requiring specific intent and nothing in defendant's jury instructions permitted imputed malice.

As defendant has thus failed to make a prima facie showing of eligibility under section 1172.6, the trial court committed no error in denying the petition.

## DISPOSITON

The order of August 29, 2023, denying defendant's section 1172.6 petition is affirmed.

_____
CHAVEZ, J.

We concur:


_____
LUI, P. J.


_____
ASHMANN-GERST, J.